FILED

2024 Dec-17  PM 03:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **SUZANNE SMITH,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  4:23-cv-00593-RDP** |
| | } | |
| **LOUIS DEJOY,** | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OPINION</u>

This matter is before the court on Defendant's Motion for Summary Judgment (Doc. # 23). The parties have fully briefed the Motion (Docs. # 36, 43). For the reasons explained below, the Motion (Doc. # 23) is due to be granted.

## I.    Background and Procedural History

This is a case involving allegations of sexual harassment, gender discrimination, and retaliation. Suzanne Smith ("Plaintiff") used to work for the U.S. Postal Service and now alleges that her female postmaster touched her in a sexual way on four occasions and that she experienced discrimination and retaliation for complaining about these incidents.

The court has gleaned the facts set out in this opinion from the parties' submissions and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at trial. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Plaintiff worked for the U.S. Postal Service as a Sales Service Associate for twenty-three years. (Doc. # 22-1 at 3). She worked at the post office located in Albertville, Alabama, starting in

1998 and for all periods relevant to this lawsuit. (*Id.*). The hierarchy at a post office is, from the top down, as follows: postmaster, supervisor, and lead clerk. (Doc. # 28-2 at 6). Robin Lee became the postmaster at the Albertville Post Office in late May 2016. (Doc. # 22-1 at 4).

On June 22, 2016, Plaintiff filed a request for intermittent FMLA sick leave, which was approved. (Doc. # 28-2 at 8; 30-3). As a Post Office Manager testified, Lee would have had access to this type of electronic information to check on whether Plaintiff's leave was approved FMLA leave. (Doc. # 28-2 at 8).

Plaintiff testified that the first incident of sexual touching was on June 29, 2016. (Docs. # 22-1 at 5, 10; 22-4; 22-5). Specifically, Plaintiff testified that she was in the finance room looking for a new express label for international mailing, and Lee walked up behind Plaintiff and rubbed her breasts against the back of Plaintiff's arm. (*Id.*). Plaintiff described the finance room as "very small" with roughly four feet by four feet of space in which to walk. (Doc. # 22-1 at 5). Plaintiff testified that she tried moving away from Lee, but because the room was very small, she decided to leave and stop looking for the express label. (*Id.*; Docs. # 22-4; 22-5).

Plaintiff testified that the second incident occurred on July 7, 2016, in the stock room at the post office, when she and Lee were discussing how Lee's daughter had rearranged the room. (Doc. # 22-1 at 6). According to Plaintiff's testimony, once inside the stockroom, which had a roughly three-feet by eight-feet walkway, Lee "leaned up against my body," again with her breasts touching Plaintiff's arms, and did not move even after Plaintiff asked her to back up. (*Id.*; Docs. # 22-4; 22-5).

Plaintiff testified that the third incident occurred on July 13, 2016, in the finance room, where Plaintiff was sitting at a desk doing computer work when Lee entered the room. (Docs. # 22-1 at 6; 22-4; 22-5). She claims that Lee bent down on Plaintiff's left-hand side and Plaintiff

could feel Lee's breast on her shoulder, as well as hear her breathing. (Doc. # 22-1 at 6). Plaintiff testified that she felt scared, stopped her work, and left the room. (*Id.*). Lee denies Plaintiff's allegations. (Docs. # 22-21 at 40-54; 22-20 at 28).

On July 20, 2016, Plaintiff emailed her local union representative, alleging that she was "being sexually harassed" by Lee with unwelcome physical contact. (Docs. # 22-1 at 10; 22-4 at 1). The union filed a grievance on Plaintiff's behalf for this harassment on July 22, 2016. (Doc. # 29-2). On July 25, 2016, Plaintiff made similar allegations to a state union representative. (Docs. # 22-1 at 11; 22-5).

From July 23 to July 25, 2016, the U.S. Postal Service sent two people to the Albertville Post Office to conduct an "Advanced Initial Management Inquiry" ("AIMI") to investigate the allegations. (Docs. # 22-1 at 2, 5, 10; 22-21 at 2, 4; 28-2 at 12).

On January 29, 2017, Plaintiff filed a union grievance regarding these same incidents and another verbal altercation with Lee. (Doc. # 22-37 at 1, 3). The grievance settled on January 15, 2021 with this statement: "The parties agree that employees shall be treated with dignity and respect. If further investigation is needed management and the union will jointly investigate." (*Id.* at 8). Lee was not disciplined as part of this process. (*Id.*; Doc. # 29-6).

On June 20, 2017, Lee emailed labor manager Robert Ocasio, writing that she had decided to deny Plaintiff's request for FMLA Sick Leave and charge Plaintiff with being AWOL. Lee asked Ocasio if it would "hold up." (Docs. # 28-2 at 9; 30-4). In July 2017, Lee initiated the process for a fitness for duty against Plaintiff (Docs. # 30-5; 22-20 at 13, 29), but it was denied. (Doc. # 30-6 at 1).

In October 2017, Plaintiff first contacted the EEO office regarding the 2016 incidents with Lee and the denial of her FMLA leave request. (Doc. # 22-1 at 12-13). Plaintiff received an EEO

letter dated October 10, 2017 that acknowledged her request for pre-complaint counseling. (*Id.*; Doc. # 22-6). Plaintiff alleged that she suffered retaliation in the form of: "marking me AWOL when I should be [on] FMLA," "[h]aving the junior clerk work my hours, work the higher pay," "having me do a lesser job than my 22 years would incur," "[a]nd continually singling me out on the workroom floor . . . ." (Doc. # 22-1 at 12-13). Plaintiff decided not to pursue a formal EEO complaint. (*Id.* at 12).

For the fourth quarter of 2018 and the first and second quarters of 2019, Plaintiff won awards for 100% Perfect Transactions, but claims that "Robin Lee kept them from me." (*Id.* at 15-16; Docs. # 22-7; 22-8; 22-9).

Plaintiff testified that a fourth incident of sexual harassment occurred on April 23, 2019 when she was working in the dispatch area of the post office. (Docs. # 22-1 at 17-18; 23 at 7 ¶ 29). Plaintiff testified that she was sorting mail when Lee approached and screamed at Plaintiff, "Suzanne, what are you doing? Why are you not sorting the mail? Why are you doing it this way?" (Doc. # 22-1 at 17). Plaintiff further testified that Lee grabbed a tub that Plaintiff was holding and pulled Plaintiff into her. (*Id.* at 18). Plaintiff claims she responded by saying, "What are you doing? Why are you doing this?" and left the dispatch area. (*Id.*). Plaintiff interpreted the incident as sexual because Lee's pulling of the tub resulted in Plaintiff and Lee touching "again." (*Id.*). Plaintiff did not report this alleged incident. (*Id.*). Lee testified that she was not aware that Plaintiff had accused her of a fourth incident and denied ever touching Plaintiff. (Doc. # 22-20 at 28).

On June 13, 2019, Plaintiff was involved in a verbal altercation with Lee regarding a motion sensor that Lee had installed and that was sounding off each time a customer entered the post office. (Docs. # 22-23; 22-1 at 20; 22-20 at 13-14). Plaintiff testified that when the motion sensor would not turn off, Plaintiff followed protocol by calling Lee on the intercom to turn the

sensor off. (Doc. # 22-1 at 20). Plaintiff testified that after no one came to help, Plaintiff went into the "back" to tell Lee to "shut off the buzzer, you know, because it's very loud and disturbing." (*Id.*). Plaintiff acknowledged, "I might have raised my voice and asked [Lee] to please come up and turn this buzzer off because it's so loud and the customers – I'm trying to wait on them." (*Id.* at 21).

Plaintiff's supervisor Andrew Waychoff was not present during the June 13, 2019 incident, but he later prepared a form for disciplinary action that described the incident. (Doc. # 22-23). The form described how Plaintiff "yelled across the workroom floor at the Postmaster [Lee], first to turn off a sensor that notifies of a customer entering the lobby, then yelling at the Postmaster telling her to go to her office and stay there and then finally yelling at the Postmaster that she (Smith) wasn't going to put up with the Postmaster yelling at her any longer." (*Id.* at 1). The form also noted that employees on the workroom floor had reported that Plaintiff was yelling. (*Id.*).

On June 18, 2019, Waychoff informed Plaintiff that he would conduct an investigative interview for the June 13, 2019 incident. (*Id.*). Plaintiff then asked for money orders and because Lee was the only person that could provide them, Waychoff walked to Lee's office and asked Lee to retrieve some money orders for Plaintiff. (*Id.*). Plaintiff called the police. (*Id.*). In Waychoff's words, once in Lee's office, Lee and Waychoff could hear Plaintiff on the phone talking loudly to the police about how Lee was harassing and mocking her. (*Id.* at 2). At the time, the post office lobby was full of customers and Plaintiff was saying loudly, "I'm not putting up with you anymore; I'm not taking this." (Doc. # 22-20 at 31).

In response to the incidents on June 13 and June 18, 2019, Waychoff initiated disciplinary action for an Emergency Placement and Removal. (Docs. # 22-1 at 20; 22-22; 22-23; 22-39). Waychoff listed several post office standards of conduct that he believed Plaintiff's behavior

violated, including loyalty, discharge of duties, obedience to orders, behavior and personal habits, and violent and/or threatening behavior. (Docs. # 22-22 at 2; 22-23 at 4). Waychoff also described how Plaintiff's "continuing, escalating, uncontrolled, erratic behavior in front of employees, the customers and now the Police has created an immense concern as to her mental and emotional well-being and the harm she may do to herself as well as the harm she may do to those around her." (Doc. # 22-23 at 2).

Connie Kristie Grant, who was a postmaster at a different post office, was the concurring official for both requests. (Docs. # 22-22 at 3; 22-23 at 4; 22-27 at 1; 22-39 at 2). Grant had no knowledge of any of Plaintiff's other allegations or of Plaintiff's sexual orientation. (Doc. # 22-27 at 2-4). Lee was not formally involved in the ultimate decision to terminate or place Plaintiff on Emergency Placement. She was advised by the U.S. Postal Service's Labor Relations not to be the concurring official because Plaintiff had made accusations against her. (Docs. # 22-20 at 17, 32-33; 28-1 at 1).

Plaintiff was placed on an off-duty status on June 18, 2019 and removed from the Postal Service on August 2, 2019 due to the "Unacceptable Conduct" occurring during the June 13 and June 18 incidents. (Docs. # 22-11 at 1; 22-12 at 1). Plaintiff was informed that she had violated the employee manual, including the expectation that employees "be loyal to the United States government and uphold the policies and regulations of the Postal Service," "discharge their assigned duties conscientiously and effectively," "obey the instructions of their supervisors," "conduct themselves during and outside of working hours in a manner that reflects favorably upon the Postal Service," and not engage in violent or threatening behavior. (Doc. # 22-12 at 2-3).

A Labor Management employee at the postal service, Durgeshsinh Jadeja, testified that although he has no personal knowledge of Plaintiff's investigation and Removal (Doc. # 34-1 at

6), upon review of the records in this case, he believed there was no reason for Plaintiff's Emergency Placement. (*Id.* at 10) (noting that Article 16.7 specifies that Emergency Placement is proper if "an employee is under the influence, if retaining employee could cause loss of mail or funds, or a violation of safety rules[ or] regulations injurious to self or others"). Jadeja also testified that for a Removal, which was the discipline that resulted in Plaintiff's termination, "[i]t depends," and he would need to "see the statements of the case file, what evidence we have, what past discipline that employee has." (Doc. # 34-2 at 2).

Plaintiff made initial EEO contact about the Removal on August 26, 2019. (Doc. # 22-25 at 1). Plaintiff also filed a union grievance over the Emergency Placement and Removal, and on September 24, 2019, there was a settlement as follows: "The Notice of Removal and Emergency Placement are hereby rescinded and removed from the grievant's record. The grievant will be returned to duty as soon as administratively possible. The grievant shall be made whole for all lost wages and benefits from June 18, 2019 until she is returned to duty." (Doc. # 22-24). Plaintiff returned to work on October 1, 2019. (Docs. # 22-13 at 1; 22-1 at 25; 22-20 at 30).

On November 14, 2019, Plaintiff filed a formal EEO Complaint for sex discrimination and sexual harassment on the dates of "4-23-2019," "July 2016," and "June 2016." (Docs. # 22-1 at 23; 22-14 at 1). The U.S. Postal Service accepted the matter for investigation. (Doc. # 22-15 at 1). The Acceptance for Investigation Letter provided that the scope of investigation would be whether Plaintiff was "subjected to a hostile work environment based on sex (Female) when . . . [o]n August 2, 2019 [Plaintiff] was removed from the United States Postal Service," and in a footnote stated, "[a]lthough you provide comments in your PS Form 2565, Formal Complaint, this information appears to be background information." (*Id.* at 1 & n.1).

In Plaintiff's EEO Investigative Affidavit, she alleged that she was removed because she "became a victim of sexual harassment (touching) by Postmaster Robin Lee on several occasions," and when she "did not accept these sexual advances . . . or play along with the sexual touching and dominating actions of Robin Lee I was targeted for wrongful termination." (Doc. # 22-26 at 3). Plaintiff identified "Page Laney," a female, as an employee who was treated differently from her regarding a similar infraction under similar circumstances, and identified "Renee Bynum," a female "with [a] male boyfriend," as an employee who was treated the same ("threatened to be fired") as her regarding a similar infraction under similar circumstances. (*Id.* at 4, 7). Plaintiff also listed her sexual orientation as "female married to a male" and indicated that she made management aware of this orientation by talking about her male husband "all the time." (*Id.* at 6). Plaintiff's Affidavit for Compensatory Damages detailed that she did not work overtime or on holidays due to her fear of working with Lee, that she went to her doctor often and received medication for stress and high blood pressure, and that she received various versions of counseling since 2016. (Doc. # 35-3 at 1).

Although Plaintiff had filed a Motion to Amend her complaint to add a "claim for unwanted LGBT sexual harassment" and to dispute that the dates of the four sexual incidents were background information, Plaintiff requested a Final Agency Decision before the EEOC ruled on this Motion to Amend. (Docs. # 22-30 at 1; 22-31; 22-32 at 2).

The Final Agency Decision was issued on February 13, 2023, and noted that the scope of Plaintiff's claim was whether she was "subjected to a hostile work environment based on Sex (Female) when: [o]n August 2, 2019 she was removed from the United States Postal Service." (Doc. # 22-35 at 1). The Decision also acknowledged that Plaintiff's affidavit "added the purviews of sexual orientation (heterosexual) and retaliation (prior EEOC involvement and reporting

harassment)." (*Id.* at 1 n.1). Plaintiff filed her complaint (Doc. # 1) in federal court on May 10, 2023.

## II.    Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56 requires the non-moving party to go beyond the pleadings and – by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file – designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations."

*Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson* teaches, under Rule 56(c) a plaintiff may not simply rest on her allegations made in the complaint; instead, as the party bearing the burden of proof at trial, she must come forward with at least some evidence to support each element essential to her case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

### III.    Analysis

Plaintiff asserts the following claims against Defendant: harassment/hostile work environment under Title VII (Count I), gender discrimination under Title VII (Count II), and retaliation under Title VII (Count III). The court considers each of Defendant's asserted grounds for granting summary judgment.

### A.    Exhaustion of Administrative Remedies

Among other prohibitions, Title VII forbids employment discrimination on the basis of sex by federal agencies. *See* 42 U.S.C. § 2000e-16(a). "EEOC regulations implementing Title VII prescribe a system of administrative remedies a federal employee must exhaust before bringing suit in federal court." *Hogan v. Sec'y, U.S. Dep't of Veterans Affs.*, 121 F.4th 172, 174 (11th Cir. 2024). "The employee must first initiate contact with a counselor within 45 days of the allegedly discriminatory action." *Id.* (citing 29 C.F.R. § 1614.105(a)). "The purpose of this exhaustion requirement 'is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts.'" *Gregory v. Ga. Dep't of Hum. Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004) (quoting in part *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983)). "Generally, when the claimant does not initiate contact within the 45-day charging period, the claim is barred . . . ." *Shiver v. Chertoff*, 549 F.3d 1342, 1344 (11th Cir. 2008).

Defendant argues that Plaintiff failed to properly exhaust her hostile work environment and gender discrimination claims because Plaintiff did not file an EEO complaint within 45 days of any of the four incidents that form the basis of these allegations. (*See* Doc. # 23 at 15-17, 31). The last of the four alleged touching incidents touching occurred on April 23, 2019, which was 125 days before Plaintiff made initial EEO contact in 2019. (*See* Docs. # 22-1 at 17-18; 22-25 at 1; 23

at 7 ¶ 29).[1] This is greater than 45 days, and thus indicates that her hostile work environment or discrimination claims based on these incidents are time-barred and not administratively exhausted. However, any claims based on the Removal are not time-barred as the Removal occurred on August 2, 2019, within 45 days of when she made initial EEO contact (on August 26, 2019). (Docs. # 22-25 at 1; 22-12 at 1).

The only remaining question is whether there is any legal doctrine allowing Plaintiff to bring otherwise time-barred claims based on incidents other than the Removal. There is not.

This is, in part, because Plaintiff may not file a judicial complaint that is broader in scope than her EEOC investigation. Generally, a "plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Gregory*, 355 F.3d at 1280 (quoting with alterations *Alexander v. Fulton Cnty., Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000) (overruled in part on other grounds)). Although allegations in a Title VII case may include discrimination-like or allegations related to those in the EEOC charge, "[a]llegations of new acts of discrimination, offered as the essential basis for the requested judicial review are not appropriate." *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989) (quoting *Ray v. Freeman*, 626 F.2d 439, 443 (5th Cir. 1980) (quoting in turn *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970))).

The scope of the EEOC investigation was this: whether Plaintiff was "subjected to a hostile work environment based on sex (Female) when . . . [o]n August 2, 2019 [Plaintiff] was removed

---

[1] Even though Plaintiff contacted the EEO about the first three alleged incidents of sexual harassment in early October 2017, this was over 400 days after what was the most recent alleged incident of harassment at that time – on July 13, 2016. (Docs. # 22-1 at 6; 22-4; 22-5). Therefore, even if that had resulted in the case now before the court, those claims were untimely. Additionally, Plaintiff did not complete that 2017 EEO process by filing the required complaint within 15 days of receiving notice of her right to file an official complaint. *See* 29 C.F.R. §§ 1614.105(d)-(f) (outlining types of notice a complainant may receive); 1614.106(b) (requiring a complaint to be filed within 15 days of such notice).

from the United States Postal Service." (Doc. # 22-15 at 1 & n.1). While Plaintiff moved to amend her complaint to add claims for "unwanted LGBT sexual harassment," the EEOC issued a final agency decision pursuant to Plaintiff's request and described the scope of Plaintiff's claim as only focusing on her Removal. (Docs. # 22-34; 22-35 at 1). The four alleged touching incidents are separate and distinct from Plaintiff's Removal. Thus, although claims based on Plaintiff's Removal were administratively exhausted, her claims based on the four touching incidents and any other incidents occurring more than 45 days before August 26, 2019 are not timely, and thus were not exhausted. *See Shiver v. Chertoff*, 549 F.3d 1342, 1344 (11th Cir. 2008) ("Generally, when the claimant does not initiate contact within the 45-day charging period, the claim is barred . . . .").

As to Plaintiff's hostile work environment claim, the only basis that was properly exhausted was the Removal. Hostile work environment claims can be based on untimely incidents if they are sufficiently related to timely incidents. However, Plaintiff has failed to show that the four untimely asserted touching incidents are sufficiently related to her Removal to form part of a continuing hostile work environment claim. A "hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) (citing 42 U.S.C. § 2000e-5(e)(1)). "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for purposes of determining liability." *Id.* "The pivotal question is whether the timely discrete acts are sufficiently related to the hostile work environment claim." *Chambless v. Louisiana-Pacific Corp.*, 481 F.3d 1345, 1350 (11th Cir. 2007).

To be sufficiently related, the circumstances surrounding Plaintiff's Removal must "suggest that [that] discrete act[] w[as] the same type of 'discriminatory intimidation, ridicule, and insult' that characterized the untimely allegations." *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510

U.S. 17, 21 (1993)). Characteristics that make actions of the "same type" include whether they were similar kinds of actions, whether this specific type of conduct was repeated, and whether the same individuals engaged in the conduct. *Morgan*, 536 U.S. at 120-21. In *Chambless*, for example, the Eleventh Circuit held that where a plaintiff alleged a hostile work environment claim that was untimely as well as a retaliation claim that was not, the retaliation claim was not sufficiently related to the hostile work environment claim to save it. 481 F.3d at 1350.

Similarly, here, Plaintiff alleges two different types of behavior. First, she alleges that Lee touched her on four different occasions: three times in 2016 and once in 2019. Second, she alleges that Lee was involved in her termination through the disciplinary process in June 2019. The touching incident does not resemble the act of termination. The frequency is also different. While Plaintiff alleges four sexual touching incidents, quite obviously she was only terminated once. And while Plaintiff alleges that Lee was responsible for the touching, the Rule 56 record lends no support to that assertion. Lee was not formally involved in Plaintiff's termination. (Docs. # 22-20 at 17, 32-33; 28-1 at 1). Taken together, this evidence indicates that Plaintiff's termination is not of the "same type" as the alleged touching by Lee. Therefore, Plaintiff's termination does not rehabilitate any hostile work environment claim based on the four touching incidents. The only claims that were timely and therefore administratively exhausted are those which are based on Plaintiff's termination, which the court discusses separately below.

As to Plaintiff's retaliation claim, the only alleged retaliation that was properly exhausted is the Removal. In addition to her Removal, Plaintiff also asserts a retaliation claim based on Defendant's alleged "wrongful denial of Plaintiff's FMLA leave; wrongful write-ups of the Plaintiff as being 'AWOL' while on proper sick leave documented by doctor's notes; improper denial of higher-level pay for which the Plaintiff was eligible; and denial of daily work breaks the

Plaintiff was entitled to under the APWU collective bargaining agreement." (Doc. # 1 ¶ 13). Plaintiff also describes how her USPS service awards "had been unlawfully withheld from her by Postmaster Lee as part of the retaliation." (*Id.* ¶ 14).

"A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'" *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). Even though Title VII uses the terminology of "unlawful employment *practice*," this language does not "convert[] related discrete acts into a single unlawful practice for the purpose of timely filing." *Id.* at 111 (citing 42 U.S.C. § 2000e-6(a)). "We have repeatedly interpreted the term 'practice' to apply to a discrete act or single 'occurrence,' even when it has a connection to other acts." *Id.* Therefore, to form the basis of a timely claim, each of these alleged discrete acts of retaliation must have occurred within 45 days of Plaintiff's EEO contact, which was on August 26, 2019.

None of the matters complained about satisfy this requirement. As to the wrongful denial of FMLA leave, Lee wrote about this denial in an email on June 20, 2017. (Docs. # 28-2 at 9; 30-4). At best, this is 69 days before Plaintiff's initial EEO contact in October 2017. (Doc. # 22-1 at 12-13). And, even if it had been within 45 days of Plaintiff EEO contact in October 2017, this would not have qualified as administrative exhaustion because Plaintiff did not complete that EEO process by filing an official complaint within 15 days of receiving notice of her right to file an official complaint. *See* 29 C.F.R. §§ 1614.105(d)-(f) (outlining types of notice a complainant may receive); 1614.106(b) (requiring a complaint to be filed within 15 days of such notice). As to the improper denial of higher-level pay (for which Plaintiff claims she was eligible) and denial of daily work breaks (to which she claims she was entitled), Plaintiff has not pointed to any Rule 56 record evidence that this occurred within 45 days of her August 2019 EEO contact. And, as to the withholding of Plaintiff's service awards, Plaintiff only provided copies of the awards themselves

and did not testify when she specifically received or should have received these awards. (Docs. # 22-1 at 15-16; 22-7; 22-8; 22-9). Therefore, she has failed to establish that these awards were withheld within 45 days of August 26, 2019, which she must do to proceed on this claim. The Rule 56 record does not show that any discrete acts of retaliation other than the Removal occurred within 45 days of her initial contact with the EEO. For this reason, Plaintiff's only timely claim of retaliation is that which is based on the Removal.

Based on Plaintiff's failure to exhaust administrative remedies, Defendant is entitled to summary judgment as to all claims on any basis other than the Removal. Nevertheless, in the interest of conducting a complete analysis, the court also considers the merits of each of Plaintiff's exhausted claims related to the Removal.

   **B.    The Rule 56 Merits of Plaintiff's Retaliation Claim**

"To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) [s]he engaged in statutorily protected expression; (2) [s]he suffered an adverse employment action; and (3) there is some causal relation between the two events." *McMillian v. Postmaster General, U.S. Postal Service*, 634 Fed. App'x 274, 277 (11th Cir. 2015) (quoting *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001)).

Regarding the first prima facie element, a plaintiff may show that she engaged in statutorily protected expression under Title VII where she "has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). These clauses are known as the "opposition clause" and the "participation clause" respectively, and they describe two different types of statutorily protected expression. *See Crawford v. Metro. Gov. of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 274 (2009). Taking

16

those in reverse order, to qualify as conduct protected under the participation clause, the conduct must relate to "proceedings and activities which occur in conjunction with or after the filing of a formal charge with the EEOC." *EEOC v. Total System Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000) (citing *Silver v. KCA, Inc.*, 586 F.2d 138, 141 (9th Cir. 1978)). Because Plaintiff did not file a formal EEO complaint until after she received the Removal, there is nothing in the Rule 56 record to indicate that she engaged in any protected participation conduct before the Removal.

To establish protected conduct under the opposition clause, Plaintiff must first "show[] that [s]he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Howard v. Walgreen Co.*, 605 F.3d 1238, 1244 (11th Cir. 2010) (quoting *Little v. United Tech., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)).

There is evidence in the Rule 56 record from which a jury could find that Plaintiff had a good faith, reasonable belief that Lee subjected her to a hostile environment because of her sex. In part, the Code of Federal Regulations defines sexual harassment as unwelcome sexual conduct "when: . . . such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." 29 C.F.R. § 1604.11(a). Plaintiff testified that the alleged touching incidents with Lee resulted in Plaintiff interrupting her work and leaving the room (Doc. # 22-1 at 6), mental anguish and emotional distress requiring counseling, high blood pressure for which Plaintiff takes medication (Docs. # 22-14 at 3; 35-3 at 1), and not working overtime or on holidays due to her fear of working with Lee. (Doc. # 35-3 at 1). In other words, Plaintiff has pointed to Rule 56 record evidence that indicates the alleged touching by Lee had the effect of interfering with Plaintiff's work performance or creating an "intimidating, hostile, or offensive working environment." 29 C.F.R.

§ 1604.11(a). This evidence therefore presents an issue of fact as to whether Plaintiff had a good faith belief that she was being sexually harassed.

In addition, there is Rule 56 evidence that Plaintiff opposed the conduct at issue. The Supreme Court has read the word "opposition" broadly, noting that the term "oppose" has an ordinary meaning of "[t]o resist or antagonize . . . ; to contend against; to confront; resist; withstand." *Crawford*, 555 U.S. at 276 (quoting Webster's New International Dictionary 1710 (2d ed. 1957)). In that sense, an employee who responded to a question by reporting that she had been sexually harassed had adequately opposed an unlawful employment practice per the opposition clause. *Id.* at 280. Applying that rationale to this case, a reasonable jury could find that Plaintiff opposed the alleged sexual harassment by emailing her local and state union representatives to prompt an AIMI investigation (Docs. # 22-1 at 10-11; 22-4; 22-5; 22-21 at 2, 4; 28-2 at 12), filing a union grievance about the sexual harassment (Doc. # 22-37 at 1, 3), initiating EEO contact about the 2016 harassment (Doc. # 22-1 at 12-13), and telling Lee "What are you doing? Why are you doing this?" in response to the fourth alleged touching incident. (Doc. # 22-1 at 18). In sum, Plaintiff has presented Rule 56 evidence that establishes the first element of her retaliation claim.

Plaintiff has also shown that she was subjected to an adverse employment action. Termination is an adverse employment action. *Crawford*, 529 F.3d at 970. Although Plaintiff was ultimately reinstated with back pay and full benefits (Doc. # 22-1 at 22), under Eleventh Circuit case law this still qualifies as an adverse employment action. "[A]n employer cannot undo the harm its actions have caused, and thereby avoid liability, simply by attempting to make the employee whole retroactively." *Crawford*, 529 F.3d at 973 (citing *Phelan v. Cook Cnty.*, 463 F.3d 773, 780 (7th Cir. 2006)). For a case like this one, where an employee is awarded back pay after reinstatement, the harm is that the employee was "deprived of the use or value of her merit pay

18

from the time it otherwise would have been awarded." *Id.* at 973. Therefore, Plaintiff has established that she suffered an adverse employment action.[2]

But, while Plaintiff has established the first two elements, she has not done so with respect to the third one. That is, Plaintiff has not presented Rule 56 evidence of a causal relation between her Removal and any protected opposition conduct. To satisfy the causal connection requirement, "a plaintiff need only show 'that the protected activity and the adverse action were not wholly unrelated.'" *Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) (quoting *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999) (in turn quoting *Simmons v. Camden Cnty. Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985))). Defendant argues that as Lee was not formally involved in terminating Plaintiff, there is no causal connection between Plaintiff's protected conduct and her termination. (Doc. # 23 at 29). The court agrees and further notes there is nothing in the Rule 56 record suggesting Lee was indirectly involved in the termination decision. Thus, Plaintiff has not presented evidence that her opposition conduct was causally related to her removal.

Waychoff and Grant signed the Emergency Placement and Removal forms. (Docs. # 22-22; 22-23). Grant testified that she did not know about Plaintiff's protected opposition conduct. (Doc. # 22-27 at 2-4). Waychoff never testified that he knew about Plaintiff's protected opposition conduct. (*See* Docs. # 22-22; 22-23). Although Waychoff wrote on one of the disciplinary forms that Plaintiff was telling the police that Lee was harassing her, this was in reference to the ongoing

---

[2] In its Motion for Summary Judgment, Defendant asserts a *Faragher/Ellerth* defense, which is an affirmative defense available when sexual harassment involves no adverse employment action. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998) (*see also* Doc. # 26 at 26). Because Plaintiff suffered an adverse employment action, this affirmative defense is unavailable.

situation on June 18, 2019, and there is no indication that it referred to the alleged touching incidents or Plaintiff's protected opposition conduct. (Doc. # 22-23 at 2).

Plaintiff has also attempted to present other circumstantial evidence of a causal relationship, but it is insufficient. None of it suggests there is a question of fact for a jury to decide. "A plaintiff relying on circumstantial evidence of retaliatory intent also may survive summary judgment by presenting evidence of a convincing mosaic of circumstantial evidence that would allow the jury to infer intentional retaliation by the employer." *Copeland v. Ga. Dep't of Corrections*, 97 F.4th 766, 783 (11th Cir. 2024). As part of this circumstantial evidence, a plaintiff must present "evidence that would allow a jury to find that 'the decision-makers were aware of the protected conduct.'" *Id.* (quoting *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000), *abrogated on other grounds by Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)).

However, Plaintiff does not present evidence showing that the decisionmakers, Waychoff and Grant, were aware of her protected conduct. Although the Postal Service's Labor Relations Specialist told Lee that she (Lee) should not be the concurring official for Plaintiff's termination, it is undisputed that Lee was not a final decisionmaker. (Docs. # 22-20 at 17, 32-33; 28-1 at 1). Further, there is no evidence that Lee told Waychoff about Plaintiff's protected opposition conduct.

Related to this, Plaintiff articulates a "cat's paw" theory in an attempt to prove discriminatory animus, arguing that even if Lee was not the decisionmaker, Waychoff could have "followed [her] biased recommendation." (Doc. # 36 at 26). But, a cat's paw theory requires evidence that the ultimate decisionmaker "followed the biased recommendation" of another "without independently investigating the complaint against the employee." *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999). Here, Plaintiff cannot rely on "mere

20

conclusions and unsupported factual allegations," to defeat summary judgment. *Ellis v. England*, 432 F.3d 1321, 1327 (11th Cir. 2005). In presenting this cat's paw theory, Plaintiff points to evidence that Lee had previously filed a Fitness For Duty against Plaintiff in 2017 and that "Plaintiff had no problems with Waychoff except when Lee was Postmaster." (Doc. # 36 at 26). This simply is not evidence that Lee influenced Waychoff's decision to file an Emergency Placement and Removal or that Waychoff followed such a recommendation without independently investigating complaints against Plaintiff. In fact, Waychoff indicates in the forms that he was present during the June 18, 2019 incident, was conducting an investigative interview about the June 13, 2019 incident, and personally heard Plaintiff talking loudly on the phone to the police, which was one of the reasons for his disciplinary requests. (Docs. # 22-22 at 1; 22-23 at 2). This is evidence that Waychoff was "independently investigating the complaint against the employee." *Stimpson*, 186 F.3d at 1332. Because Plaintiff presents nothing more than conclusory allegations to support a cat's paw theory, it is without merit.

The temporal proximity between Plaintiff's opposition in April 2019 and her Removal in June 2019 is also insufficient to show causal connection. Generally, "close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact about a causal connection." *Brungart*, 231 F.3d at 799; *see also Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999). Where temporal proximity is the *only* evidence of causation, that proximity must be "very close." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). The Eleventh Circuit has held that an adverse employment action that occurs within one month of the protected activity satisfies the causation requirement for summary judgment purposes, while a gap of two months or longer does

not. *See Summers v. City of Dothan*, 444 Fed. App'x 346 (11th Cir. 2011) (holding that one month satisfies causation requirement) *Williams v. Waste Mgmt., Inc.*, 411 Fed. App'x 226, 229-30 (11th Cir. 2011) (holding that two months is not "very close"); *Thomas*, 506 at 1364 (holding that three months does not satisfy causation requirement). In this case, Plaintiff's own testimony confirms that the April 2019 touching occurred two months before the June 2019 Removal. (See Docs. # 22-1 at 18; 22-22; 22-23). There is no other circumstantial evidence to show causation, and this two-month temporal proximity is not "very close." *Williams*, 411 Fed. App'x at 229-30; *see also Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1156 (11th Cir. 2002) (holding that a coincidence in timing is not sufficient to show causality where the evidence shows the decisionmaker lacked knowledge of the protected conduct). Therefore, because Plaintiff has not shown a causal connection, Plaintiff has filed to establish her retaliation claim.

Even if Plaintiff had established a prima facie retaliation claim (and, to be clear, she has not), she has failed to show that Defendant's legitimate non-retaliatory reasons for her removal are pretextual. When evaluating a retaliation claim, courts apply "a variation on the *McDonnel Douglas* framework." *Buckley v. Sec'y of Army*, 97 F.4th 784, 798 (11th Cir. 2024). This means that if "the plaintiff makes out a prima facie case, the burden falls on the employer to state a legitimate, non-retaliatory reason for the challenged personnel action." *Id.* (citing *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001)). "If the employer satisfies that burden, the plaintiff must carry the ultimate burden of proving that the employer's stated reason is pretext for retaliation." *Id.* (citing *Pennington*, 261 F.3d at 1266).

Defendant's legitimate, non-retaliatory reason for terminating Plaintiff is that she (Plaintiff) was involved in altercations on June 13 and June 18, 2019 that cast doubt on her fitness as a postal employee. (*See* Doc. # 23 at 30). Specifically, Waychoff reported that on June 13, 2019,

Plaintiff yelled at Lee "across the workroom floor" about the door sensor that was going off, and that on June 18, 2019 after being told that Waychoff would conduct an Investigative Interview about the June 13 incident, Plaintiff, without warning, called the police and talked loudly to them while she was at her window in front of customers. (Docs. # 22-22; 22-23 at 1-2). Waychoff listed several post office standards of conduct that he believed Plaintiff's behavior violated, including loyalty, discharge of duties, obedience to orders, behavior and personal habits, and violent and/or threatening behavior. (Docs. # 22-22 at 2; 22-23 at 4). Waychoff also described how "Smith's continuing, escalating, uncontrolled, erratic behavior in front of employees, the customers and now the Police has created an immense concern as to her mental and emotional well-being and the harm she may do to herself as well as the harm she may do to those around her." (Doc. # 22-23 at 2). These explanations are legitimate reasons for an employer to terminate an employee, and therefore the burden shifts to Plaintiff to show that they are a pretext for retaliation. *See Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1308 (11th Cir. 2023) (reason was legitimate where multiple employees reported that a fired employee had been a "bully, unprofessional, intimidating, and threatening"); *Patterson v. Ga. Pacific, LLC*, 38 F.4th 1336, 1352 (11th Cir. 2022) (reason was legitimate where employee exhibited "poor performance and excessive absences").

At summary judgment, "[t]o prove that an employer's explanation is pretextual, an employee must cast enough doubt on its veracity that a reasonable factfinder could find it 'unworthy of credence.'" *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1307 (11th Cir. 2023) (quoting *Gogel v. Kia Motors Manuf. of Ga., Inc.*, 967 F.3d 1121, 1136 (11th Cir. 2020) (en banc)). But a plaintiff must show "*both* that the reason was false, *and* that retaliation was the real reason." *Gogel*, 967 F.3d at 1136 (quotation marks omitted; alteration adopted). Where "the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head

on and rebut it." *Id.* (quotation marks omitted). "A plaintiff cannot rebut a reason 'by simply quarreling with the wisdom of that reason' or substituting her 'business judgment for that of the employer.'" *Patterson v. Ga. Pacific, LLC*, 38 F.4th 1336, 1353 (11th Cir. 2022) (quoting *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000)). "The plaintiff instead 'must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *Id.* (quoting *Gogel*, 967 F.3d at 1136) (quotation marks omitted)).

Plaintiff has not rebutted Defendant's legitimate, non-retaliatory reason for her termination. Plaintiff merely points to deposition testimony by a Labor Management employee at the postal service, Durgeshsinh Jadeja, in which Jadeja testified that although he has no personal knowledge of Plaintiff's investigation and Removal (Doc. # 34-1 at 6), he believed there was no reason for Plaintiff's Emergency Placement. (*Id.* at 10) (noting that Article 16.7 specifies that Emergency Placement is proper for if "an employee is under the influence, if retaining employee could cause loss of mail or funds, or a violation of safety rules[ or] regulations injurious to self or others"). However, Jadeja then testified that for a Removal, which was the discipline that resulted in Plaintiff's termination, "[i]t depends," and he would need to "see the statements of the case file, what evidence we have, what past discipline that employee has." (Doc. # 34-2 at 2).

This evidence does not come close to rebutting "head on" Defendant's legitimate, non-retaliatory reasons for Plaintiff's termination. *See Gogel*, 967 F.3d at 1136. Even if an Emergency Placement was inappropriate, Jadeja's testimony actually reaffirms that issuing a Removal is a matter of discretion and depends on the facts. This testimony therefore would not cause a reasonable factfinder to conclude that Waychoff's asserted reason for firing Plaintiff is "unworthy of credence." *See Patterson v. Ga. Pacific, LLC*, 38 F.4th 1336, 1353 (11th Cir. 2022) (quoting

*Gogel*, 967 F.3d at 1136) (quotation marks omitted)). Instead, Plaintiff appears to be "'quarreling with the wisdom of [her employer's] reason,'" *Patterson*, 38 F.4th at 1353 (quoting *Chapman*, 229 F.3d at 1030), which is insufficient to establish pretext. Not only has Plaintiff failed to demonstrate that there is an issue of fact as to whether Defendant's legitimate non-retaliatory reason is pretextual, but she also has not presented any evidence that the real reason for her Removal was her protected opposition conduct. For these reasons, Defendant is entitled to summary judgment as to Plaintiff's retaliation claim.

### C.    The Rule 56 Merits of Plaintiff's Hostile Work Environment Claim

As previously noted, because Plaintiff failed to exhaust her administrative remedies as to any incidents preceding her termination, Plaintiff's only remaining basis for her hostile work environment claim is her Removal. A hostile work environment claim is typically a claim that involves repeated incidents of hostile conduct. *See Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 586 (11th Cir. 2000) ("All the sexual hostile work environment cases decided by the Supreme Court have involved patterns or allegations of extensive, long lasting, unredressed and uninhibited sexual threats or conduct that permeated the plaintiff's work environment."), *abrogated on other grounds by Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)). This is because a prima facie hostile work environment claim requires that a plaintiff establish that "the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002). In that sense, "[e]ither severity *or* pervasiveness is sufficient to establish a violation of Title VII." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 743 (1998)).

Plaintiff's termination was a single discrete event. So, in the absence of pervasiveness, the only way for her hostile work environment claim to survive on this basis is for her to show that a reasonable jury could consider her termination to be severe enough to constitute a hostile work environment. This is a high bar, as a single incident of alleged harassment is typically not enough. *See Clark Cnty. School Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001). Without more, a termination is a common event in the workplace and is not objectively severe. *Cf. Uppal v. Hospital Corp. of America*, 482 Fed. App'x 394, 397 (11th Cir. 2012) (holding insufficiently severe an incident where a supervisor put his arm around an employee "in an unwelcomed sexual manner"); *Breeden*, 532 U.S. at 271 (holding insufficiently severe a single incident of a supervisor making a suggestive comment while reviewing with an employee survey responses). There is nothing in the Rule 56 record that distinguishes Plaintiff's termination from a typical discharge. Therefore, Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim.

### D.     The Rule 56 Merits of Plaintiff's Gender Discrimination Claim

To establish a prima facie case of gender discrimination under Title VII, Plaintiff must demonstrate that (1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) she was treated less favorably than a similarly situated individual outside her protected class. *See Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003). There is no dispute that Plaintiff satisfies the first three elements of this prima facie framework.

Regarding the fourth element, there is a substantial question as to whether Plaintiff has identified any similarly situated individuals outside her protected class who were treated more favorably than she was. In her EEO Investigative Affidavit, Plaintiff identified "Page Laney," a female, as an employee who was treated differently from her regarding a similar infraction under

similar circumstances. (Doc. # 22-26 at 4, 7). Given that Plaintiff's protected class is defined as females attracted to males, Plaintiff's identification of another female with an unknown sexual orientation does not qualify as an individual outside her protected class. The only other person Plaintiff identified in her Affidavit was "Renee Bynum," who she describes as a female employee "with [a] male boyfriend," who was treated the same ("threatened to be fired") as her regarding a similar infraction under similar circumstances. (Doc. # 22-26 at 4, 7). Rather than identifying an individual *outside* her protected class (females attracted to males), Plaintiff identifies an individual who may or may not be within her protected class as well as another individual who is within her protected class. Moreover, because Plaintiff describes Bynum as having been treated the same as Plaintiff, this again does not satisfy the requirement that Plaintiff identify a similarly situated individual who was treated more favorably than she was. For this reason, Plaintiff has failed to establish the fourth element of a prima facie gender discrimination claim.

More importantly, even if Plaintiff had pointed to Rule 56 evidence that could establish a prima facie gender discrimination claim, she would not be able to rebut Defendant's legitimate non-discriminatory reason as pretextual. Defendant's proffered reason for Plaintiff's Removal is that Plaintiff was involved in altercations on June 13 and June 18, 2019 that cast doubt on her fitness as a postal employee. (*See* Doc. # 23 at 30). As discussed above in relation to her retaliation claim, this reason is legitimate, and Plaintiff has failed to show that it is pretextual.

Therefore, Defendant is entitled to summary judgment as to Plaintiff's gender discrimination claim.

### E.    The Rule 56 Merits of Plaintiff's Constructive Discharge Claim

Plaintiff's complaint does not assert a constructive discharge claim. (*Cf.* Doc. # 1). However, in its Motion for Summary Judgment, Defendant argues that Plaintiff is not entitled to

damages for back pay or front pay post-retirement because these would only be available if Plaintiff was also asserting that she was constructively discharged. *See Bourque v. Powell Electrical Mfg. Co.*, 617 F.2d 61, 65-66 & n.8 (5th Cir. 1980) (noting that absent a constructive discharge claim, damages are limited to back pay) (*see also* Doc. # 23 at 17-20).

Although the parties have now briefed the issue of whether a constructive discharge claim would survive summary judgment (*see* Docs. # 23 at 17-20; 36 at 22-24; 43 at 8-9, 10-11), Plaintiff may not amend her complaint through briefing on a motion for summary judgment. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (per curiam) ("[T]he proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a)."). Because the Supreme Court has characterized a constructive discharge claim as a separate claim, *Green v. Brennan*, 578 U.S. 547, 557-60 (2016), Plaintiff must have asserted this claim explicitly in her original complaint. Plaintiff did not plead a constructive discharge claim, and thus this claim requires no further analysis. But, even if she had, she has not come close to pointing to any Rule 56 evidence that would permit her to present this claim to a jury.

To establish a constructive discharge, Plaintiff "must show harassing behavior 'sufficiently severe or pervasive to alter the conditions of [their] employment.'" *Pennsylvania State Police v. Suders*, 542 U.S. 129, 133 (2004) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 54, 67 (1986)). Plaintiff must also "show that the abusive working environment became so intolerable that her resignation qualified as a fitting response." *Id.* at 134. The only timely behavior Plaintiff alleges is her Removal, and as the court discussed above in its analysis of Plaintiff's hostile work environment claim, Plaintiff's Removal was not sufficiently severe or pervasive. There is simply no Rule 56 evidence that Plaintiff's resignation would be a "fitting response" for the allegedly harassing behavior of her Removal. Not only that, but it defies both law and logic that an

appropriate response to being terminated and then rehired is to quit and then claim constructive discharge. Therefore, even if Plaintiff had pleaded a constructive discharge claim, it would also be due for dismissal.

**IV.      Conclusion**

For the reasons discussed above, Defendant's Motion for Summary Judgment (Doc. # 23) is due to be granted. An order consistent with this memorandum opinion will be entered contemporaneously.

**DONE** and **ORDERED** this December 17, 2024.

_____
**R. DAVID PROCTOR**
CHIEF U.S. DISTRICT JUDGE